IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BENIGNO N.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil No. 23-1226 (GLS)

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA" or "agency") decision to redetermine and terminate his Social Security Disability Insurance ("SSDI") benefits. Docket Nos. 1, 14. The SSA opposed. Docket No. 19. Plaintiff replied. Docket No. 20. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 6. After careful review of the administrative record and the parties' briefs, the SSA's decision is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.

**I.     Procedural Background**

Plaintiff worked as a mechanic and truck driver for a steel company until 2009. Tr. 1005, 1567, 1582.[2] On June 29, 2009, Plaintiff filed an application for SSDI claiming that, as of January 12, 2009, the following conditions limited his ability to work: back problems, cervical pain, carpal tunnel syndrome, depression, diabetes, and sleep apnea. Tr. 741-42. Plaintiff received treatment from several doctors as evidenced by his disability report, including neurologist Dr. José R. Hernández-González ("Dr. Hernández"). His non-attorney representative at the time was Samuel Torres-Crespo ("Torres-Crespo"). Tr. 18, 766-67. Plaintiff's claim was allowed at the initial level

---

[1]     Plaintiff's last name is omitted for privacy reasons.

[2]     "Tr." refers to the transcript of the record of proceedings.

1

of administrative review, and a determination was issued on November 12, 2009, finding him disabled dating back to January 12, 2009. Tr. 740. Plaintiff began receiving insurance benefit payments.

After an extensive fraud investigation, the United States Department of Justice charged several doctors and a non-attorney representative of making false statements or representations of facts in the medical reports submitted to the SSA. Tr. 768. Among those indicted were Dr. Hernández and Torres-Crespo. Id. Dr. Hernández pled guilty to participating in a conspiracy to make false statements to SSA from 2008 through 2013. Tr. 834-36. Dr. Hernández admitted that he "would exaggerate medical complaints and symptoms in order to maximize the probability that his patients would be approved for Social Security disability insurance benefits." Tr. 836. Dr. Hernández agreed with Torres-Crespo to share the proceeds received as payment from approved beneficiaries. Tr. 835-36. Torres-Crespo also pled guilty. Tr. 926-33.

On December 12, 2013, the SSA informed Plaintiff that, after revisiting his file, his disability benefits were suspended due to fraud or similar fault in the evidence on which the SSA relied when adjudicating his claim. Tr. 768, 1556. Plaintiff's benefits were suspended pending redetermination. Tr. 768. On February 6, 2014, the SSA informed Plaintiff that, after disregarding medical evidence submitted by Dr. Hernández, there was insufficient evidence of Plaintiff's disability and that his benefits would be terminated. Tr. 771. The letter advised Plaintiff that he had sixty (60) days to seek reconsideration. Plaintiff timely moved for reconsideration, but the agency affirmed the denial of benefits. Tr. 787-88. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 797. Plaintiff appeared at the hearing on January 24, 2017. Tr. 19. On January 22, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 12-40. After the Appeals Council denied review, Plaintiff appealed the ALJ's decision to the United States District Court for the District of Puerto Rico. Tr. 1-2, 1514. See Navarro v. Comm'r of Soc. Sec., No. 18-1356 (MDM). Pursuant to agreement by the parties, the District Court remanded the case to the agency under sentence four of 42 U.S.C. § 405(g). See Navarro v. Comm'r of Soc. Sec., No. 18-1356 (MDM), Docket No. 28 (D.P.R. Feb. 28, 2020). The District Court ordered Plaintiff's benefits to be reinstated and the suspension of overpayment collection efforts. Id.

A rehearing was held before a new ALJ on March 29, 2022. Tr. 1546-88. The ALJ informed Plaintiff that he would have an opportunity to rebut the exclusion of evidence submitted by Dr.

Hernández and Torres-Crespo. Tr. 1552, 1553, 1557, 1558, 1559, 1561. Counsel for Plaintiff stated that "Dr. Jose Hernandez pleaded guilty to two cases, and this was not one of them, and the reason that the evidence was excluded was not fully detailed to us[.]" Tr. 1554. Other than a reference to the plea agreements, the ALJ did not explain how Plaintiff's records were marred by fraud. On July 21, 2022, the ALJ concluded that Plaintiff was not entitled to disability benefits. Tr. 1507-35. The ALJ reasoned that the medical records submitted by Dr. Hernández involved fraud or similar fault because he pled guilty and admitted that "he would exaggerate medical complaints and symptoms in order to maximize the probability that applicants would be approved for the disability benefits." Tr. 1516. The ALJ further noted that Plaintiff testified during the hearing that Dr. Hernández told him that he was more ill than he realized. Tr. 1516, 1565. The ALJ disregarded the evidence submitted by Dr. Hernández in accordance with 42 U.S.C. § 405(u)(1)(B). Tr. 1516 (disregarding Ex. 3F, 4F, 5F). The ALJ did not exclude evidence provided by Torres-Crespo. Tr. 1516. The ALJ then found that Plaintiff was not disabled. The Appeals Council denied Plaintiff's subsequent appeal. Tr. 1500. On May 9, 2023, Plaintiff filed this action. Docket No. 1.

## II.    Discussion

Plaintiff's arguments may be divided into two categories: errors committed by the ALJ and Due Process violations in the redetermination process.[3] The Court begins with errors allegedly made by the ALJ in the redetermination process. See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) (discussing the constitutional avoidance doctrine).

### 1. Standard of Proof for Fraud or Similar Fault

"The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). "When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall

---

[3] Throughout his brief, Plaintiff emphasizes that he was not indicted or found guilty of fraud in relation to his disability application. The Court acknowledges that he was not charged, as did the ALJ. See Tr. 1555. Section 405(u)(1)(A) requires a "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." The claimant himself or herself need not be involved. See SSR 22-1p(C)(2), 2022 WL 2533116, at *5 ("For [SSA] to disregard evidence it is not necessary that the affected beneficiary or recipient had knowledge of or participated in the fraud or similar fault").

3

disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." Id. § 405(u)(1)(B). To redetermine a claim under Section 405(u), the SSA must have some "reason to believe" that fraud or similar fault was involved. The Appeals Council defines its procedures and guiding principles in the Hearings, Appeals and Litigation Law manual ("HALLEX").[4] According to HALLEX, the agency may develop a "reason to believe" an application involved fraud or similar fault as a result of (1) an SSA investigation, (2) a referral based on a criminal or other law enforcement investigation, or (3) a referral from the Office of the Inspector General at the SSA ("OIG") to the Commissioner of Social Security. HALLEX I-1-3-25(C)(4)(a) (updated June 7, 2022). Plaintiff claims that the SSA must demonstrate the existence of fraud or similar fault by a preponderance of the evidence. Docket No. 14 at pp. 11-13, 19-20. The Commissioner disagrees. Docket No. 19 at pp. 10-12. I concur with the Commissioner.

Social Security Regulation ("SSR") 22-2p,[5] 2022 WL 2533117, clarifies that when disregarding evidence under Section 405(u), the finding of similar fault "requires more than mere suspicion, speculation, or a hunch, but it does not require a preponderance of evidence." And while the First Circuit has yet to determine the level of deference to be imparted to SSRs (Coskery v. Berryhill, 892 F.3d 1, 5 n.3 (1st Cir. 2018), there is no doubt that SSRs are entitled to deference, Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003). In support of his contention, Plaintiff cites to HALLEX I-1-3-15. But HALLEX I-1-3-15 requires proof by preponderance of the evidence in **reopening** procedures. Reopening procedures are different from redeterminations. A redetermination is appropriate under the "reason to believe" standard, which requires no more than probable cause. United States v. Vasquez-Algarin, 821 F.3d 467, 474-75 (3d Cir. 2016); United States v. Werra, 638 F.3d 326, 327 (1st Cir.

---

[4] HALLEX can be found online at https://www.ssa.gov/OP_Home/hallex/hallex.html.

[5] Plaintiff mentions SSR 16-2p and HALLEX § I-1-3-15 in his brief. Docket No. 14 at pp. 11-12, 14. However, SSRs 16-1p and 16-2p were rescinded and replaced by SSRs 22-1p and 22-2p in May 2022. And HALLEX § I-1-3-15 mirrors the procedures outlined in SSR 22-2p. SSR 22-2p "explains the standards [the agency] use[s] when [it] determine[s] whether there is reason to believe that similar fault was involved in providing evidence in connection with a claim for benefits or payments." SSR 22-2p, 2022 WL 2533117, at *2.

2011). Indeed, HALLEX I-1-3-15(C)(1) states that "[t]he reason to believe standard … does not require a preponderance of the evidence."

### 2. Res Judicata

Plaintiff contends that because there was no evidence of fraud or similar fault in his medical records, *res judicata* precludes the SSA from revisiting his case. Docket Nos. 14 at pp. 13-15; 20 at p. 6. *Res judicata* principles apply to administrative proceedings. See Carlos V. v. Comm'r of Soc. Sec., 2024 WL 554347, at *5 (D.P.R. Feb. 12, 2024); Berríos-Ortiz, 2019 WL 4599834, at *4 (D.P.R. Sept. 23, 2019); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977); Miranda v. Sec'y of Health, Ed. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975). Nonetheless, Congress delegated to the SSA the power to redetermine a claim under certain circumstances, including "if there is reason to believe that fraud or similar fault was involved in the application of the individual." 42 U.S.C. § 405(u)(1)(A); City of Arlington, Tex v. F.C.C., 569 U.S. 290, 291 (2013) (an agency can act pursuant to the authority delegated by Congress). In the instant case, the SSA had reason to believe Plaintiff's claim involved fraud or similar fault after Dr. Hernández and Torres-Crespo were indicted. Both Dr. Hernández and Torres-Crespo were charged with making false statements to the SSA and they pled guilty to fraud. As such, redetermination of Plaintiff's disability claim was authorized by statute and not precluded by *res judicata*. See Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 810-11 (6th Cir. 2018) (section 405(u) overrides principles of *res judicata* and authorizes reassessments of initial determinations if there is reason to believe that fraud was involved in the application); Berríos-Ortiz, 2019 WL 4599834, at *4 (*res judicata* inapplicable when a redetermination arose from the indictment of one of the doctors who examined the claimant).

### 3. Ex Post Facto Clause

Plaintiff alleges that the ALJ erred in referring to SSRs (i.e., SSR 16-1p) that were implemented by the agency after the events that gave rise to this case. See Docket No. 14 at p. 10. But Plaintiff failed to develop the argument and "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Further, although SSR 22-2p (see reference at Tr. 1515) became effective on May 17, 2022, the prohibition against *ex post facto* application of the law applies to criminal law. Mahler v. Eby, 44 S. Ct. 283, 286 (1924); Weaver v. Graham, 101 S. Ct. 960, 964 (1981) ("[t]he ex post facto prohibition forbids that Congress and the States to enact any

law which imposes a punishment[.]"); Justiniano v. Comm'r of Soc. Sec., 2024 WL 3072239, at *9-10 (D.P.R. Apr. 11, 2024), report and recommendation adopted Justiniano v. Comm'r of Soc. Sec., 2024 WL 3070687 (D.P.R. June 20, 2024). Moreover, the SSR 22-1p's definition of "similar fault" did not "impose new or additional liabilities, but instead" restated a definition that has been widely used. Cox v. Kijakazi, 77 F.4th 983, 994 (D.C. Cir. 2023). See also Justiniano, 2024 WL 3072239, at *9; Mendenhall v. Colvin, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) ("where new rules merely clarify unsettled or confusing areas of the law, retroactive application is proper").

### 4. The ALJ's Analysis

Plaintiff argues that the ALJ was biased. His arguments against the impartiality of the ALJ are undeveloped. See Zannino, 895 F.2d at 17. Plaintiff has also failed to rebut the presumption that the ALJ is unbiased "by a showing of conflict of interest or some other specific reason for disqualification." Krol v. Beryhill, 2017 WL 1196644, at *5 (D. Mass. Mar. 29, 2017) (quoting Johnson v. Colvin, 2016 WL 4639134, at *12 (D. Mass. Sept. 6, 2016)). See also Schweiker v. McClure, 456 U.S. 188, 195 (1982). The ALJ informed Plaintiff before and during the hearing which exhibits could be disregarded as tainted evidence. Tr. 1550, 1779. The ALJ indicated that she would make her determination as to fraud or similar fault "**after** the hearing." Tr. 1553, 1158. (Emphasis added). The ALJ explained that she had "no interest in the fraud or similar fault finding, one way or the other[.]" Tr. 1558. There is simply no evidence of bias. An unfavorable decision is insufficient. See e.g., Warren v. Colvin, 2015 WL 5673117 (D.S.C. Sept. 25, 2015).

### 5. SSA's Redetermination Period

Plaintiff challenges the time period considered during redetermination: January 12, 2009 through November 12, 2009. Docket No. 14 at pp. 16, 21-28. Plaintiff argues that the SSA should have considered evidence through the date last insured, March 31, 2014. This argument is unavailing. SSR 22-1p expressly requires ALJs to "consider the claim only through the date of the final determination or decision on the beneficiary's or recipient's application for benefits or payments (i.e., the date of the original favorable determination or decision)." SSR 22-1p, 2022 WL 2533116, at *6; Justiniano, 2024 WL 3072239, at *10. SSR 22-1p's predecessor (SSR 16-1p) included the same language. Id.

### 6. Witness Subpoena

Prior to the hearing before the ALJ, Plaintiff's attorney requested that the OIG employee who made the determination of fraud or similar fault be made available for the hearing. Tr. 1554,

6

1875. The ALJ declined to issue a subpoena. Plaintiff now claims that it was erroneous not to allow him an opportunity to question the OIG employee that made the determination of fraud. Docket No. 14 at pp. 4, 8-9, 18. Plaintiff has again waived this argument as it is undeveloped. Zannino, 895 F.2d at 17. Notwithstanding the foregoing, the decision to issue a subpoena relies within the discretion of the ALJ. Ramos Montalvo v. Saul, 2022 WL 15525955, at *7 (D.P.R. Feb. 28, 2022); 20 C.F.R. § 404.950(d). Courts review the ALJ's decision for abuse of discretion. Feliciano v. Chater, 901 F. Supp. 50, 52 (D.P.R. 1995). The ALJ explained to Plaintiff that redetermination "was triggered by [the SSA's] own finding of fraud, not by the OIG referral." Tr. 1556. The SSA's investigation commenced well before the OIG's referral in 2015. See tr. 768, 834-36. The ALJ thus concluded that having an OIG employee testify would not assist in the redetermination process. Tr. 1557. The ALJ's decision was reasonable as it was not the OIG that triggered the decision to redetermine. She did not abuse her discretion.

### 7. Waiver of Overpayment

Section 405(u) states that whenever "there is insufficient evidence to support [the] entitlement [of disability benefits], the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3). The Commissioner may "require such overpaid person or his estate to refund the amount in excess of the correct amount." 42 U.S.C. § 404(a)(1)(A). Beneficiaries may seek a disability insurance waiver to avoid repayment of benefits later deemed to be overpayments." 42 U.S.C. § 404(b)(1).

Plaintiff alleges that he has a right to waiver of any overpayment. Docket No. 14 at 26-28. The Commissioner counters that Plaintiff's request is premature because Plaintiff did not exhaust administrative remedies before seeking judicial intervention. The process to request that the collection of amounts overpaid by SSA be waived requires "an allegation of an overpayment assessment, administrative appeal of the issue, and a final decision from the SSA declining to waive the overpayment." Justiniano, 2024 WL 3072239, at *8. See also D.S. v. Kijakazi, 2024 WL 22858, at *2 (D. Mass. Jan. 2, 2024). Plaintiff has not sought the waiver of overpayment to the SSA. Administrative remedies have not been exhausted.

### 8. Due Process Claims

Having rejected Plaintiff's allegations of errors by the ALJ, we address Plaintiff's due process claim. Plaintiff contends that the SSA violated his due process rights by not allowing him

to challenge the SSA's findings of fraud in his application for benefits. Plaintiff claims that the SSA presumed that the medical evidence provided by Dr. Hernández was fraudulent simply because he had been convicted of making false statements to the SSA in unrelated cases. The Commissioner counters that the agency provided Plaintiff notice and an opportunity to be heard. And that the ALJ's determination of fraud was supported by Dr. Hernández's plea agreement and Plaintiff's testimony. Docket No. 19 at pp. 12, 19-24.

In issuing the notice of redetermination, the SSA relied on 42 U.S.C. § 405(u), which states that "[t]he Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits ..." Id. at § 405(u)(A). The statute further states: "[w]hen redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." Id. at § 405(u)(B). Before SSA disregards evidence pursuant to Section 405, the ALJ "will consider the individual's objection to the disregarding of that evidence and decide whether there is reason to believe that fraud or similar fault was involved in the providing of evidence in the individual's case." HALLEX I-1-3-25(C)(4)(a) (updated June 7, 2022). See also SSR 22-1p(C)(2)(c), 2022 WL 2533116.

It is well established that the continued receipt of social security benefits is a statutorily created property interest protected by the Fifth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Pérez-Maldonado v. Comm'r of Soc. Sec., 2024 WL 3517637, at *5 (D.P.R. July 24, 2024). The SSA cannot terminate benefits without first providing the claimant the opportunity to challenge the claim of fraud. Pérez-Maldonado, 2024 WL 3517637, at *5. The U.S. Supreme Court applies a three-part balancing test to claims of due process violations: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Plaintiff's private interests are at stake. Plaintiff has a substantial economic interest in continued receipt of disability benefits. Mathews, 424 U.S. at 332. Most likely, Plaintiff needs his

social security disability insurance to pay for his expenses. Additionally, "there may be a loss of dignity when the government terminates disability benefits on the basis of fraud or similar fault[.]" Picón-González v. Comm'r of Soc. Sec., 2019 WL 4187701, at *14 (D.P.R. Sept. 4, 2019). Although Plaintiff could file a new application for benefits, "filing a new application for disability benefits is not an accessible mitigation method because beneficiaries must restart the entire process." Agosto v. Comm'r of Soc. Sec., 2019 WL 6190612, at *5 (D.P.R. Nov. 20, 2019).

The Government avers that Plaintiff was given notice of the hearing and the exhibits the agency planned to disregard, and that Plaintiff was given an opportunity to rebut the exclusion of medical evidence. But while there is no dispute that Plaintiff received notice of the hearing, that the agency informed that it planned to disregard evidence submitted by Dr. Hernández and Torres-Crespo, and that Plaintiff was allowed to testify at the hearing, "the SSA bore the burden of production [] to present its reasons for believing that [Plaintiff's] claim for benefits was tainted by fraud [or similar fault]." Pérez-Maldonado v. Comm'r of Soc. Sec., 2024 WL 3517637, *5 (D.P.R. July 24, 2024). The SSA did not meet its burden in this case.

In Pérez-Maldonado, a case nearly identical to this one, the SSA redetermined Pérez Maldonado's disability benefits after receiving a referral by the OIG and concluded that she was not disabled after finding that there was fraud or similar fault in her application. Pérez Maldonado appealed and this District Court found that the SSA's initial redetermination violated her due process rights by not allowing her to challenge the finding of fraud or similar fault. The case was remanded for a rehearing. After the rehearing, the SSA determined that Pérez Maldonado was not entitled to benefits. Again, she moved to reverse the Commissioner's decision to terminate her disability benefits based on violations to her constitutional rights. This District Court concluded that Pérez Maldonado's due process rights were violated when the SSA failed to produce evidence to support its finding of fraud at the hearing stage. Pérez-Maldonado, 2024 WL 3517637 at *5-6. That is, according to Pérez-Maldonado, it is not sufficient to inform a claimant the evidence that it intends to disregard as fraudulent. It is necessary for the SSA to inform the claimant the basis for the SSA's belief that the evidence supports a finding of fraud in that claimant's case.

In this case, the ALJ stated in her opinion that Dr. Hernández admitted in his plea agreement that he would exaggerate medical complaints and symptoms to maximize the probability the claimant would be approved for disability benefits, and that Plaintiff testified that Dr. Hernández once told him that his symptoms were worse than Plaintiff realized. Tr. 1516. The

9

ALJ understood this to be sufficient to disregard the medical evidence submitted by Dr. Hernández in support of Plaintiff's application for benefits. Id. But, as in Pérez Maldonado, the SSA did not clearly articulate before or during the hearing why it believed that the medical evidence submitted by Dr. Hernández (as to Plaintiff specifically) was tainted by fraud. Neither did the ALJ provide an explanation that would allow Plaintiff or this Court to link specific records submitted by Dr. Hernández as to Plaintiff with fraud. See Pérez-Maldonado, 2024 WL 3517637 at *6 ("The hearing notice sent to [Plaintiff] merely referred to the investigations and guilty plea[] of … Dr. Hernández, but none of these mention [Plaintiff], and the SSA did not otherwise articulate a link between h[is] records and the fraud scheme."). To allow the ALJ's determination of fraud to stand would be to require that Plaintiff should have had to prove a negative (that his case did not involve fraud) "without reference to the reasons why the SSA suspected fraud in the first place." Id. at *5. A such, "while the hearing technically gave [Plaintiff] a chance to rebut the SSA's fraud allegation, there was nothing presented for h[im] to rebut." Id. Plaintiff's redetermination proceedings violated his procedural due process rights.

### III.  Conclusion

For the reasons discussed above, the SSA's decision to terminate benefits is **REVERSED**. The case is remanded for administrative proceedings consistent with the Court's opinion.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 26th day of September 2024.

> s/Giselle López-Soler
> GISELLE LÓPEZ-SOLER
> United States Magistrate Judge